```
                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF KANSAS


PATRICIA BROWN,                  )
                                 )
               Plaintiff,        )
                                 )
vs.                              )     Case No. 07-1376-MLB
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of                  )
Social Security,                 )
                                 )
               Defendant.        )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

Administrative law judge (ALJ) Robert J. Burbank issued his decision on October 10, 2006 (R. at 13-19). Plaintiff was found to be insured through December 31, 2009 (R. at 15). Plaintiff alleged disability beginning October 13, 2004 (R. at 13). At step one, the ALJ found that plaintiff had not engaged in

substantial gainful activity since October 13, 2004, the alleged onset date (R. at 15).  At step two, the ALJ found that plaintiff had the following medically determinable impairments: musculoskeletal and asthmatic complaints with depression.  However, the ALJ further found that plaintiff did not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the ALJ concluded that plaintiff did not have a severe impairment or combination of impairments (R. at 15).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 18).

**II.  Did the ALJ err in his finding that plaintiff did not have a severe impairment or combination of impairments at step two?**

The burden of proof at step two is on the plaintiff.  See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis."  Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect

on his or her ability to do basic work activities.[1]  <u>Williams</u>, 844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work.  <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).  The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists.  20 C.F.R. § 404.1513(a), § 416.913(a).  Evidence from other medical sources, including

---

[1] Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3; <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123 (10th Cir. 2004).

therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work.  20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

At step two, when the plaintiff has established by objective medical evidence that he or she has a medically determinable impairment(s), and that the impairment(s) could reasonably be expected to produce the alleged symptoms, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated (along with the objective medical and other evidence) to determine the extent to which the symptoms affect the individual's ability to do basic work activities.  This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.  Pruitt v. Barnhart, 2007 WL 461020 at *3-4, Case No. 06-1034, Doc. 17 at 6-9 (D. Kan. Jan. 2, 2007).  In this case, the ALJ made the following findings:

> After considering the evidence, of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.

(R. at 18).[2]

---

[2]The ALJ indicated that the actual treatment records do not indicate severe limitations (R. at 17), and later stated that he agreed with the opinions of the State agency medical consultants who found no severe impairments (R. at 18).  However, the ALJ had

The ALJ then provided numerous reasons to support his finding that plaintiff was not entirely credible. However, many of the reasons provided by the ALJ are not supported by the record. First, the ALJ stated that "Although she reported asthma or bronchitis, this was not diagnosed in the medical records" (R. at 18). However, on November 16, 2004, Dr. Sadiq stated that plaintiff "has a respiratory history of asthma" (R. at 238). Asthma was also assessed on May 18, 2004, and it was noted that plaintiff was using an inhaler (R. at 196). Although it is not

---

found that plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible (R. at 18). Once the requisite relationship between the medically determinable impairment(s) and the alleged symptoms has been established, the intensity, persistence, and limiting effects of the symptoms(s) must be considered along with the objective medical and other evidence in determining whether the impairment or combination of impairments is severe. If the ALJ finds that such symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, the ALJ must find that the impairment(s) is severe and proceed to the next step in the process even if the objective medical evidence would not in itself establish that the impairment(s) is severe. SSR 96-3p, 1996 WL 374181 at *2. Therefore, the fact that the ALJ found that the objective medical evidence, of itself, did not in itself establish a severe impairment does not end the inquiry in this case. Because the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, the ALJ, as he did in this case, was required to make a finding about the credibility of plaintiff's statements about the symptom(s) and its functional effects in determining whether plaintiff's impairment(s) are severe at step two. SSR 96-7p, 1996 WL 374186 at *1, 3.

clear from a medical record from January 5, 2006 whether bronchitis is assessed (the hand-written notes are somewhat illegible, but it appears to indicate bronchitis), that medical record does clearly state that plaintiff is suffering from coughing and wheezing leading to urinary incontinence (R. at 308). A medical record dated February 10, 2004 indicates that plaintiff cannot breathe well, has a barking cough, and an inhaler was prescribed (R. at 200). Thus, contrary to the ALJ's findings, the medical record does clearly establish a diagnosis of asthma, along with related symptoms.

Second, the ALJ found that "CT and chest x-rays are normal" (R. at 18). The chest x-ray of February 12, 2003 found the following:

> Mild subsegmental atelectasis in the lingular
> region, otherwise, normal chest.

(R. at 282). A chest x-ray of June 18, 2004 found the following:

> Area of discoid atelectasis or scarring in
> the lingula. Otherwise, negative chest xray.

(R. at 224). A third x-ray on August 15, 2005 indicated the following:

> Discoid atelectasis left lower lung. This
> probably is within the lingula.

(R. at 328).

A fourth x-ray on October 5, 2005 found the following:

> Ill-defined linear opacity in the left base
> may be secondary to atelectasis versus
> scarring. 2. No evidence of

>     pneumomediastinum or neumothorax status post
>     bronchoscopy.

(R. at 326). Thus, contrary to the ALJ's findings, the chest x-rays do not indicate entirely "normal" findings. The ALJ failed to set forth the findings noted above on the x-rays.

The first chest CT scan on September 23, 2005 indicated the following:

>     1. Multiple foci of interstitial thickening
>     are seen in the right middle lobe and
>     lingula, corresponding to the abnormality on
>     x-ray.
>
>     2. Two small focal opacities in the
>     inferior-anterior right lower lobe could be
>     infiltrate, atelectasis, or interstitial
>     thickening.

(R. at 378). The second chest CT scan on March 13, 2006 indicated the following:

>     The peripheral reticular opacities previously
>     seen in the right middle lobe, are unchanged
>     from the prior examination. Areas of ground
>     glass opacity previously seen in the right
>     middle lobe and lingula of the left upper
>     lobe, are also unchanged from the prior
>     examination, likely due to atelectasis. No
>     new pulmonary opacity is noted.

(R. at 360). Again, contrary to the ALJ's findings, the chest CT scan results do not indicate "normal" findings. The ALJ failed to set forth the findings noted above on the CT scans.

Third, the ALJ indicated that the x-rays of the knee are "unremarkable" (R. at 18). However, a lumber spine x-ray on March 31, 2005 indicated the following:

> Vertebral height and alignment are satisfactory. There is a "limbus" developmental defect anterosuperiorly at L3. There is mild-moderate narrowing of the lumbosacral disc space with mild marginal spurring and eburnation and a "vacuum disc" phenomenon. Remaining disc spaces appear adequately maintained. There is minor end plate osteophytosis between L1 and 4. I see no abnormalities affecting the posterior elements or sacroiliac joints. A small amount of calcium is seen in the walls of he abdominal aorta.

(R. at 253). Dr. Jones, a medical consultant, noted these findings in his report, and neither he nor the radiologist found the x-ray report to be "unremarkable" (R. at 251, 253). The ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his determination. The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002). In the absence of any medical evidence indicating that the lumbar spine x-ray was unremarkable, the ALJ overstepped his bounds into the province of medicine. Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996). Furthermore, the ALJ failed to set forth any of the lumbar spine x-ray findings noted above.

Fourth, the ALJ found that plaintiff's depression "appears to be controlled with antidepressants" (R. at 18). However, there is no medical evidence or an opinion from a medical professional that indicates that plaintiff's depression is

11

controlled with medication.  Dr. Simmonds noted that plaintiff was being treated with medication for her depression, but he did not indicate that her depression was controlled with medication (R. at 256).  As noted above, the ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment.  Furthermore, as the ALJ noted (R. at 17), plaintiff stopped taking the anti-depressant medication, Wellbutrin, in July 2006 because it made her feel funny and jittery (R. at 389, 392).  Thus, it would not have been possible after July 2006 for plaintiff's depression to be controlled with medication.

Fifth, the ALJ, in finding plaintiff not entirely credible, also relied on the fact that plaintiff had custody of her grandson, noting that she had the ability to care for him (R. at 18).  The ALJ had previously noted that her grandson received SSI income and that she received money from Social and Rehabilitation Services to care for him (R. at 17).  However, not mentioned by the ALJ was the fact that plaintiff testified on September 28, 2006 that she no longer cared for her grandson, but that her daughter took him and now cares for him (R. at 450-451). Plaintiff indicated that she was no longer able to take him to school and his activities because she would get real tired when

12

she walked and her legs would ache and she would have to sit down. She indicated her grandson was 10 years old and she could not keep up with him (R. at 452). The ALJ cannot distort the evidence and ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995). It was therefore clearly erroneous for the ALJ to rely on plaintiff's care of her grandson without mentioning or taking into consideration her testimony that she was no longer able to care for him.

The ALJ, when making his credibility assessment of the plaintiff, made numerous findings unsupported or contradicted by the record, as set forth above. Because a credibility assessment requires consideration of all the pertinent factors in combination, when several of the factors relied upon by the ALJ are found to be unsupported or contradicted by the record, this court is precluded from weighing the remaining factors to determine whether they, by themselves, are sufficient to support the ALJ's credibility determination. Romero v. Apfel, 2000 WL 985853 at *4 (10th Cir. July 18, 2000). For this reason, this case should be remanded in order for the ALJ to conduct a proper analysis of plaintiff's credibility.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on October 30, 2008.

>s/John Thomas Reid
>JOHN THOMAS REID
>United States Magistrate Judge